[S. F. No. 9228. In Bank.—October 20, 1919.]

JULIAN E. CARY, Petitioner, v. J. N. LONG, Mayor etc., et al., Respondents.

[1] ARBITRATION—AGREEMENT BETWEEN MUNICIPALITY AND INDIVIDUAL—FINALITY OF JUDGMENT SUSTAINING AWARD—VALIDITY OF AGREEMENT NOT ATTACKABLE.—An arbitration agreement between a municipality and an individual cannot be attacked by the former on the ground that the making of the same was beyond the power of the city, after the award has been filed pursuant to the code provisions relating to arbitrations and sustained by a judgment of the superior court, which has become final.

[2] ID.—SUBMISSION OF CONTROVERSY TO ARBITRATION—POWER OF MUNICIPALITY.—A municipal corporation, like an individual, has power to submit to arbitration any controversy which might be the subject of a civil action against it.

[3] MUNICIPAL CORPORATIONS—DAMAGES FROM HIGHWAY CONSTRUCTION—AGREEMENT TO ARBITRATE—PAYMENT OF JUDGMENT—APPLICABILITY OF ACT OF 1901.—Under the act providing for the payment of judgments against counties, cities, cities and counties, and towns (Stats. 1901, p. 794), a judgment obtained against a city on claims for damages for a series of torts arising by reason of the construction by the city of a highway may be enforced through the processes provided by such act, notwithstanding it was stipulated between the city and the claimant that the amount of such damages should be left to arbitration.

[4] COUNTIES — PAYMENT OF JUDGMENT — INCLUSION OF WHOLE AMOUNT IN ANNUAL TAX LEVY UNWARRANTED—CONSTRUCTION OF ACT OF 1901.—A writ of mandate requiring city officials to include

in the tax levy for the current year an amount sufficient to pay the whole of a judgment obtained against the city is too broad, in view of the provision of the act providing for the payment of judgments against counties, cities, cities and counties, and towns (Stats. 1901, p. 794), that the officers having authority to levy taxes may provide, at their option, for the payment of the judgment in successive years in annual installments, with the proviso that no fractional levy and payment shall be less than one-tenth of the whole amount of the judgment.

PROCEEDING in Mandamus to compel city officials to provide for payment of judgment against municipality. Writ granted.

The facts are stated in the opinion of the court.

Beverly Hodghead for Petitioner.

D. J. Hall, Alvin Gerlack and T. H. De Lap for Respondents.

THE COURT.—In this case the following opinion, prepared by Mr. Justice Richards, was filed in the district court of appeal of the first appellate district, division one.

"Application for a writ of mandate, whereby the petitioner seeks to have the respondents, who are the properly constituted officials of the city of Richmond, commanded to include in the tax levy of said city for the current year, an amount sufficient to pay a judgment which the petitioner holds against said city for the sum of seventeen thousand dollars with interest.

"The facts out of which the claim of said petitioner, which ripened into said judgment, arose are practically undisputed and are briefly as follows: On the twenty-second day of June, 1913, the city of Richmond commenced an action in the superior court of Contra Costa County against the Atchison, Topeka & Santa Fe Railway Company, Julian E. Cary, the petitioner herein, and certain other defendants, to condemn certain lands described in the complaint in said action for the purpose of constructing a highway from the central portion of the city of Richmond to the outer harbor. The line of said highway, according to the averments of said complaint, ran across certain lands of the Atchison, Topeka & Santa Fe Railway, of which the said defendant Cary was in

possession under an arrangement with the railway company, which permitted him to use said lands for or in connection with a brickyard. After the inception of said suit and in order to expedite the construction of said highway a stipulation was entered into between the attorneys of record for the parties to said action, by the terms of which the city was permitted to immediately proceed with the construction of said highway over the lands described in said complaint as belonging to said railway company and as occupied by said Cary, without first ascertaining the amount of damages to be paid to the said defendants for the taking and use of said lands. By the express terms of the stipulation entered into between the attorneys of record for the plaintiff in said action and the attorneys of record for said defendant Cary 'the question of the amount of damage which shall be sustained by said J. E. Cary by the taking of said property and the construction of a highway thereover by the city of Richmond as described in said complaint is to be determined at the trial of said cause, and said plaintiff hereby agrees that it will pay to said J. E. Cary promptly the amount of any judgment which may be awarded and fixed as the damage herein and without appeal therefrom, unless plaintiff should abandon said proceedings within the time and in the manner provided by section 1255a of the Code of Civil Procedure of the State of California.' Subsequent to the making of said stipulation the city of Richmond, being unable to make satisfactory terms with Cary as to his claim for damages, a resurvey of the line of the highway was made which removed its route from the lands occupied by Cary, and the construction of said highway proceeded to completion along its new alignment. In the meantime the said plaintiff, the city of Richmond, made a settlement with the railway company by which it agreed to pay a certain sum for the damages caused by the taking of such portion of the lands of said corporation as were occupied by the highway according to its new alignment. Having thus disposed of the claims both of the railway company and of said Cary in so far as these related to the taking of the lands owned or held in use by either for the purposes of said highway, the condemnation suit was not pressed to trial, and was in fact practically abandoned, since the purposes for which it was instituted had been fully subserved. There remained, however, certain claims for damages which

were insisted upon by Cary as having been suffered by him through the construction of said highway, and which were asserted by him to have arisen by reason of the destruction of a spur-track connecting his brickyard with the main line of the Santa Fe Railroad, and also by reason of the interruption in his business and the restriction of his storage facilities and certain other items of incidental damage resulting from such construction. These various elements of alleged damage were itemized in seventeen specific claims which he presented against said city, and upon which apparently he threatened to bring an action against the municipality. In order to arrive at an adjustment of these claims as between itself and said Cary the city of Richmond, through its duly constituted officials, entered into an agreement for the arbitration thereof. This agreement of arbitration, which was executed by the respective parties thereto on the twenty-ninth day of July, 1916, proceeded to recite the fact of the institution of said condemnation suit and of the making and substance of the aforesaid stipulation therein, and then provided that 'Whereas said highway has been constructed and completed, and disputes and differences have arisen and still exist between the parties hereto as to the amount of damage which said city should in justice pay to said Cary as sustained by him by reason of the construction of said highway or boulevard, whether the matter of his said claim for damages be strictly involved in said action above named or not. Now, therefore, it is hereby agreed that all said disputes and differences shall be referred to arbitration.' It then proceeds to appoint arbitrators and to set forth such other matters as may be properly provided for in arbitration agreements in pursuance of section 1283 of the Code of Civil Procedure.

"Upon the execution of this agreement of arbitration the arbitrators named therein duly qualified and proceeded to hear and determine the matters which were by its terms submitted to them, and having taken a considerable amount of evidence with respect to the asserted claims of said Cary against said city, proceeded to make an award, and in so doing allowed to said Cary the sum of seventeen thousand dollars as the aggregate amount of his damages, which award was, in accordance with the terms of the arbitration agreement, duly filed with the county clerk of the county of Contra Costa in pursuance of the aforesaid section of the Code of Civil Procedure.

Thereafter the city of Richmond, being dissatisfied with the amount of said award, moved the superior court of said county for an order vacating the same, and, after said hearing, being submitted to the judge of said court for decision, was decided against the contention of the said city of Richmond and in favor of said Cary. From the decision thus rendered an appeal was taken to the supreme court, which was later, on motion, dismissed, and the judgment of the said arbitrators and the order of the superior court confirming the same thereby became a finality and became in force and effect a final and general judgment in favor of said Cary and against the said city of Richmond, and is still in full force and effect as such. The said judgment, not having been paid by said city, and no steps having theretofore been taken looking to the satisfaction thereof, the petitioner herein instituted this proceeding whereby he seeks by a writ of mandate to compel the properly constituted officials of the city of Richmond to include in their tax levy for the current year an amount sufficient to pay said judgment.

"This action upon the part of said petitioner is predicated upon the provisions of the act of the legislature approved March 23, 1901, entitled, 'An act to provide for the payment of judgments against counties, cities, cities and counties and towns.' (Stats. 1901, p. 794.)

"The respondents in this proceeding have appeared and filed an answer, setting forth in substance the facts above recited, and also undertaking to set forth certain facts impeaching the good faith and proper conduct of the arbitrators in said arbitration proceeding, and also assailing their award as excessive, unjust and fraudulent. The said respondents also in their answer assert that the said agreement for arbitration was and is void for the reason that the making of the same was beyond the power of the city of Richmond or its officials.

"As to these latter contentions, they may be briefly disposed of. [1] With respect to the integrity of the judgment itself, we are of the opinion that the award of the arbitrators, having been duly filed in the superior court of the county of Contra Costa in pursuance of the provisions of the Code of Civil Procedure relating to arbitrations, and having been there assailed by the said municipality upon the various grounds of misconduct, fraud, error, and excess in amount which are set forth in the answer of the respondents herein, and the said

award having upon hearing as to these various matters before said court been sustained, and the decision of said court thereon having become final upon a dismissal of the appeal, the integrity of said award and said decision sustaining the same can no longer be made the subject of assault, and that, therefore, in so far as the portions of the respondents' answer herein, which undertake to assail the same, are concerned, we are not at liberty to consider them.

[2] "As to the contention of the respondents herein that the action of the city of Richmond through its regularly constituted officials in agreeing to submit to arbitration the claim or claims for damages insisted upon by the petitioner herein, and which might otherwise have been the subject of a civil action, was *ultra vires*, we are of the opinion that a municipal corporation, like an individual, has power to submit to arbitration any controversy which might be the subject of a civil action against it. Section 1281 of the Code of Civil Procedure broadly provides that 'Persons capable of contracting may submit to arbitration any controversy which might be the subject of a civil action between them.'

"This brings us to the main contention of the parties to this proceeding. On the part of the petitioner herein it is contended that the claims which he asserted against the city of Richmond and which were made the subject of arbitration between himself and it were claims for damages for a tort or series of torts arising by reason of the construction by the city of Richmond of that certain highway which was originally the subject of the condemnation suit, and that the judgment based thereon, having its foundation in tort, is such a judgment as may be enforced through the processes provided by the statute of 1901. On the other hand, it is the contention of the respondents herein that the claims of the petitioner which ripened into said judgment were claims arising solely out of a stipulation entered into in the aforesaid condemnation suit and out of the agreement to arbitrate which was predicated thereon, and hence that the said judgment which the petitioner holds is one having its foundation in contract, and that this being so it comes within the inhibition of section 18 of article XI of the state constitution, and is therefore, a judgment the superior court of Contra Costa County had no power to enter, and one which the petitioner herein has no constitutional right to have enforced, either under the provisions of

the statute of 1901 or in any other manner against the said municipality.

[3] "We are of the opinion that the contention of the petitioner herein must be sustained. In the recent case of *Metropolitan Life Ins. Co.* v. *Deasy* (Cal. App.), 183 Pac. 243, it was decided by this court that a creditor of a municipality, holding a general judgment against it which was founded upon a claim for damages sustained by said judgment creditor through the construction of a tunnel, which caused certain injuries to his property, was entitled to have the benefit of the provisions of the statute of 1901 for the enforcement and collection of said judgment. This decision by this court was based upon the decision of the supreme court in the case of *City of Long Beach* v. *Lisenby,* 180 Cal. 52, [179 Pac. 198], which deals with the question of the constitutionality of the act of the legislature in question. While it is true, as the respondents herein contend, that the matter out of which the claims for damages which the petitioner herein asserted against the said municipality had their inception in the institution by the city of Richmond of the condemnation suit above referred to, and that as between the attorneys of record for the respective parties in said action a stipulation was entered into which provided that the amount of damages which should be sustained by the petitioner herein through the taking of the property described and the construction of a highway thereover should be left to determination at the trial of said cause; and it is also true that thereafter the said municipality, the plaintiff in said action, changed the route of its proposed highway so as to exclude therefrom the property which the petitioner herein held in possession, by which exclusion any amount of damage which he might have suffered through the taking of said property was eliminated; and while it is also the fact that after the completion of said highway along the route of its new alignment and after said condemnation suit had ceased to be a living litigation, the said petitioner herein was still found to be asserting claims for damages resulting from the construction of said highway, and consisting in the main of elements of damages which would not have been the proper subject of admeasurement or determination in said condemnation proceeding, especially in view of the changed route of said highway; and it is also true that as between the petitioner herein and the said city of Richmond an agreement for

the arbitration of said claims was entered into, which agreement contained certain recitals with respect to the institution of said condemnation suit, and with respect also to the said stipulation made between the attorneys of record therein— we are still of the opinion that these facts, engagements, and agreements between the parties did not operate to change the fundamental nature and basis of the petitioner's claim for damages against said municipality which ripened finally in the general judgment which he seeks to have enforced in this proceeding. In so far as the stipulation which was entered into between the attorneys for the respective parties in the condemnation suit is concerned, the only purpose and effect of said stipulation was to postpone the hearing and determination of the question of the amount of damage which the petitioner Cary, as the defendant in said action, might sustain by the taking of the lands which he held in possession until the trial of said suit. Said stipulation could have had no other or further effect, for the reason that the attorneys of record for the parties to said action had no authority to bind their respective clients further than that which was conferred upon them under the provisions of section 283 of the Code of Civil Procedure. In so far as the agreement for an arbitration is concerned, it cannot be held to have created any new or contractual obligation as between the said municipality and the petitioner herein beyond the obligation and agreement to submit whatever claims for damages the petitioner herein held against said municipality to arbitration. Such an agreement in no respect altered the nature or character of the petitioner's claims against said city. They remained after said agreement as before it—claims for damages arising out of the construction by said city of a highway in proximity to the business and property of the petitioner, and in respect to claims of this nature we can perceive no difference between them and the claims for damages which were asserted in the case of *Metropolitan Life Ins. Co.* v. *Deasy, supra,* which claims we held were in the nature of claims sounding in tort, and hence the proper subject of a general judgment against the municipality. This being so, it is our conclusion that the petitioner in this case, as in that case, is entitled to a writ of mandate compelling the performance on the part of the officials of the city of Richmond who are named as respondents herein, of those acts specially enjoined upon them under the provisions

of the aforesaid statute of 1901, *supra,* for the levy and collection of a tax sufficient to pay the amount of the general judgment which the petitioner herein holds against said city.''

We are entirely satisfied with this opinion and adopt the same as part of the opinion of this court.

[4] The transfer to this court was ordered because we were of the opinion that the writ of mandate directed by the judgment of the district court of appeal was too broad in its terms, in view of the provisions of the act under which the writ was sought. (''An act to provide for the payment of judgments against counties, cities, cities and counties, and towns,'' approved March 23, 1901, Stats. 1901, p. 794.) Under these provisions the officers having authority to levy taxes may provide, at their option, for the payment of the judgment in successive years in annual installments, with the proviso that no fractional levy and payment shall be less than one-tenth of the whole amount of the judgment. We see no good reason to doubt the validity of this part of the act. Any writ issued should leave the officers free to exercise this option. The petitioner asked for a writ requiring the inclusion of the whole amount of the judgment in this year's tax levy. The judgment of the district court of appeal was that ''the writ issue as prayed for.''

It is ordered that a peremptory writ of mandate issue requiring respondents to provide in accord with the provisions of this act for the payment of the judgment referred to, together with interest thereon.

Angellotti, C. J., Wilbur, J., Shaw, J., Olney, J., Lawlor, J., Lennon, J., and Melvin, J., concurred.