[Civ. No. 33523.    Second Dist., Div. Four    Sept. 25, 1969.]

VIOLA, INC., Plaintiff and Respondent, v. SANTA BAR-
BARA HIGH SCHOOL DISTRICT et al., Defendants
and Appellants.

Robert K. Cutler, and George P. Kading, County Counsel, Robert D. Curiel, Assistant County Counsel, and Douglas V. Hart, Deputy County Counsel, for Defendants and Appellants.

Cohen, Whitfield & Osborne, Thomas B. Osborne and Theodore J. England for Plaintiff and Respondent.

KINGSLEY, J.—This case comes to us, as petitioner[1] points out, on a curiously truncated clerk's transcript, consisting of only a part of the documents which we assume must have been in the superior court file or introduced in evidence in the trial court. We state only such facts as were specifically found to be true by the trial court, together with such facts as are necessarily to be inferred therefrom.

We conclude from the findings and from the recitals in a document entitled "Submission of Controversy to Arbitration," an executed copy of which is attached to one of the pleadings and which is referred to in the findings: (1) that, in 1963, the parties entered into some kind of a contract for the construction of a school building or buildings; (2) that thereafter a dispute arose over defendant school districts' liability for alleged "extra" work; (3) that a petition to require the district to submit that dispute to arbitration was filed by petitioner; and (4) that that petition was granted by an order of the trial court, made and entered on February 16, 1966. We are not told what the terms of the original contract were, nor what provision, if any, it contained relative to arbitration,[2] nor what allegations appeared in the original petition to compel arbitration, nor on what facts and theory the court order of February 16, 1966, was based.[3] All that we actually know is: (1) that, under the compulsion of that court order, the parties did, on November 10, 1966, agree to submit a (by then existing) dispute to arbitration; (2) that

[1]We refer to the parties as they were designated in the trial court: "Petitioner" refers to the construction contractor who instituted the proceeding to correct and confirm the arbitration award; "Respondent" refers collectively to the school districts which resisted that petition.

[2]We are aware of the fact that, in their Response to the Petition to Correct and Confirm the Award, the respondent districts pleaded that the original contract contained certain language dealing with arbitration. But there is no finding that that allegation was true.

[3]Absent knowledge of the allegations in the original petition to compel arbitration, or of the findings on which the order of February 16, 1966, was based, we do not know whether the arbitration was ordered because of the alleged clauses pleaded by defendants or because of some other language contained in some other document subsequently executed.

an arbitration was held, resulting in an award in favor of petitioner; and (3) that (after a clerical correction in the mathematics) the trial court entered a judgment confirming the award.

Nothing in the record before us raises any issue as to the validity of the assumed original construction contract, nor of the existence or nonexistence of conduct by the parties complying with any applicable limitations on the power or mode of actions of respondent districts. We necessarily start with the presumption—nowhere in this record rebutted—that the respondent districts had acted within their legal powers in contracting for the school buildings, that that contract did not offend any legal limitation on incurring indebtedness, and that any changes in, or "extras" beyond, the work contemplated by the original construction contract and for which petitioner recovered in the arbitration award had been ordered by the respondent districts in the manner required by law. Furthermore, since the only issue that we know that was submitted to arbitration was one over an existing dispute, we are not faced with any issue as to the legality of a contract by a school district to submit future disputes to binding arbitration.[4]

As a result, the only issue properly before us on this appeal is the contention by the respondent districts that, under no circumstances, may a school district validly contract to submit an existing dispute to arbitration. That contention we reject.

We turn, first, to the contention that an arbitral award might result in requiring a district to pay for work costing more than its legal limit of indebtedness, or for work not lawfully contracted for. As we have pointed out above, there is nothing in the record before us that raises any such question as to this arbitration.   It is clear from the ruling of the Supreme Court in *Black* v. *Cutter Laboratories* (1955) 43 Cal.2d 788 [278 P.2d 905], that if an award attempts to require a party to act in violation of public policy, the award cannot be confirmed or enforced.   But, in their opposition to confirmation, the respondent districts nowhere alleged any invalidity in the basic construction contract, nor did they allege that the arbitration award conflicted with any statutory

---

[4]We do not intend to imply that a contract by a school district to submit a future dispute to arbitration is invalid; that issue simply is not before us on this record.

limitation on the mode or manner of making public contracts. Their sole ground of opposition in the trial court, as here, was that a school district could never lawfully submit any dispute to arbitration. Under those circumstances, in the face of an arbitral award that shows no defect in the making of a contract or in the ordering of any "extras," and on a record that shows no effort to challenge the award on any such ground in the trial court, respondent districts may not urge here purely hypothetical errors or mistakes of law by the arbitrators.[5]

The respondent districts admit that they have no authority for their contention that a school district can never agree to binding arbitration. They admit that, by holding or by necessary inference, California courts have sustained the validity of arbitration agreements by other kinds of public entities. Their theory is that, since a school district is a municipal corporation of limited powers, the general language of section 1280 of the Code of Civil Procedure does not apply to them. But the districts are given the express power to contract and the express power to sue or to be sued. We can see no reason why those express powers do not include the power to include in construction contracts clauses usual in that industry, nor why the power to "sue or be sued" is necessarily restricted to suits in courts of law. As petitioner points out, that is the opinion of the text authorities in the field.[6]

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

---

[5] It is, of course, true that an arbitral award need not contain findings or set out the arbitrators' reasoning process and that, in a "general" arbitration, a court cannot ordinarily review the arbitrators' views as to the law. But *Cutter* makes it clear that those rules are not applicable to an error of law which conflicts with major public policy and that a party may go behind the face of the award to show a violation of such public policy. Here, absent any challenge to the integrity of the award as such, we must presume that the claims allowed ($40,000 out of a demand for $77,000) were based on work or change orders validly issued by the respondent districts.

[6] Consult, inter alia: Feldman, *Arbitration Law in California* (1957) 30 So.Cal.L.Rev. 375, 417; Note, 40 A.L.R. 1370, 1373, 3A Antieau, Local Government Law (1967) § 30C.06.