[S.F. No. 23736. May 29, 1979.]

JOHN L. TAYLOR, as City Manager, etc., et al.,
Plaintiffs and Respondents, v.
CHARLES CRANE et al., Defendants and Appellants.

[S.F. No. 23735. May 29, 1979.]

BERKELEY POLICE ASSOCIATION et al.,
Plaintiffs and Appellants, v.
CITY OF BERKELEY et al., Defendants and Respondents.

## COUNSEL

Carroll, Burdick & McDonough and Christopher D. Burdick for Plaintiffs and Appellants and for Defendants and Appellants.

Van Bourg, Allen, Weinberg & Roger, Stewart Weinberg, Stefanie Arthur, Bodle, Fogel, Julber, Reinhardt & Rothschild, Loren R. Rothschild, Lester G. Ostrov, Joel N. Klevens and Stephen Reinhardt as Amici Curiae on behalf of Plaintiffs and Appellants and Defendants and Appellants.

Michael Lawson, City Attorney, and Charles O. Triebel, Jr., for Plaintiffs and Respondents and for Defendants and Respondents.

OPINION

**BIRD, C. J.,**—This case presents the question of whether an arbitrator's order and award conflicted with the Charter and Ordinances of the City of Berkeley, and are therefore not binding on the city.

I

On the night of April 16, 1974, Charles Crane, a permanent civil service employee with the rank of police inspector, dined at a Berkeley restaurant with a friend. As they left the restaurant, Crane saw three persons who appeared to be burglarizing his friend's automobile. While pursuing the suspects on foot, Crane fired two shots from his police service revolver, wounding one of the three.

Four days later, City Manager John Taylor discharged Crane on the grounds that he had violated a city police regulation restricting the use of firearms in the course of police duty.[1] As a member of the Berkeley Police Association, Crane invoked a grievance procedure which provided for arbitration of disputes relating to the discipline of police officers.

After preliminary steps in the grievance process had failed to produce accord, the parties signed an "arbitration submission agreement" (submission agreement), which designated the issue to be decided by the arbitrator as follows: ". . . 'Was Inspector Crane properly discharged by City Manager John L. Taylor as provided in the Charter of the City of Berkeley, applicable Ordinances, Resolutions, Personnel Rules, Regulations, and Department Orders, Rules and Regulations?' If not, what should the remedy be?" William Eaton, an attorney and arbitrator, was designated to hear the case.

On March 6, 1975, Mr. Eaton issued his final opinion and award. The arbitrator found that Crane had violated the police regulations in

---

[1]Police regulation 323 provides in pertinent part: "Officers shall not discharge firearms in connection with police duty except under the following circumstances:

". . . . . . . . . . . . . . . . . . . . . .

"3. In the necessary defense of the officer's life.

"4. In the necessary defense of the life of another person.

"5. To apprehend a known felon, when the officer has reasonable cause to believe he may be armed and may be an immediate threat to life."

Police regulation 106 declares that "violation by an employee of any Police Regulation . . . may be considered sufficient cause for discharge, suspension, demotion, or other penalty."

question. However, Eaton concluded that in view of all the facts, Crane should be suspended, not discharged.

In reaching this conclusion, Eaton carefully reviewed the evidence and circumstances of the case, including Crane's distinguished record. Crane's superiors had testified that he was the best investigating officer the department had ever known. They also testified that Crane worked long hours without thought of reward or extra compensation.

The arbitrator noted that at the time of the incident in dispute, Crane had been working unusually long hours and was under considerable stress. Part of this stress related to the fact that Crane had been warned by the FBI that he had been marked for assassination by a violent political group which he had been investigating in connection with a bank robbery.

The arbitrator also found it significant that the Alameda County District Attorney had expressly determined that Crane's actions did not warrant criminal prosecution under state law. In addition, Eaton noted that the city had been unable to show that it had ever clearly communicated to its police officers that a violation of the regulations in question could result in discharge. Finally, the arbitrator's opinion emphasized testimony that if Crane's discharge were sustained, it would likely end his distinguished career as a police officer.

In these circumstances, Eaton found that Crane's actions constituted sufficient cause for a substantial disciplinary suspension, but not for dismissal. Crane was ordered suspended for 30 days, but otherwise reinstated at rank with back pay.

The city refused to honor the arbitrator's award. The police association filed suit seeking judicial confirmation of the award. The city in turn sought a declaratory judgment that the award was void. After consolidating the actions, the trial court found that under the Berkeley City Charter, the city manager had the exclusive power to discipline or remove city employees. The court ruled that the findings and award of the arbitrator were in conflict with this power and that the award was not binding on the city. Crane and the police association appeal.

## II

Article VII, section 28 of the Berkeley City Charter grants the city manager the power and duty to "appoint, discipline or remove" city employees "subject to the civil service provisions of this Charter."[2] The "civil service provisions" of the charter authorize the city to establish a personnel board "to administer a personnel system under rules and regulations to be made by the Council."[3]

The city council has exercised this authority by adopting Ordinance No. 2342-N.S. (personnel ordinance) and Resolution No. 34,480-N.S. (resolution). Together, these enactments establish a merit system of civil service employment under supervision of the city's personnel board. The personnel ordinance grants tenure to permanent city employees during good behavior and proved fitness for the position. (Personnel ordinance, § 12 (a).)[4] The resolution provides that permanent employees may be discharged only "for a cause." (Resolution, rule XV, § 1.)[5] Disciplined

[2]Article VII, section 28:

"The City Manager shall be responsible to the Council for the efficient administration of all of the affairs of the City. He shall have the power, and it shall be his duty:

". . . . . . . . . . . . . . . .

"(b) Except as otherwise provided in this Charter, to appoint, discipline or remove all heads or directors of departments, chief officials and all subordinate officers and employees of the City, subject to the civil service provisions of this Charter. Neither the Council nor any of its committees or members shall dictate, either directly or indirectly, the appointment of any person to office or employment by the City Manager or in any manner interfere with the City Manager or prevent him from exercising his own judgment in the appointment of officers and employees in the administrative service. Except for the purpose of inquiry, the Council and its members shall deal with the administrative service solely through the City Manager, and neither the Council nor any member thereof shall give orders to any subordinates of the City Manager, either publicly or privately."

[3]Former article IX, section 56 [now art. XVI, § 119]: "[The City of Berkeley shall have the right and power] to establish a Personnel Board and to appoint the members thereof to serve without compensation, to administer a personnel system under rules and regulations to be made by the Council."

[4]"The tenure of every employee holding a position shall be during good behavior and proved fitness for the position on the basis of duties and responsibilities, but any officer or employee may be removed or otherwise disciplined as provided by this ordinance and the rules established hereunder."

[5]"An employee in the competitive service may be discharged at any time by the City Manager, but if the probationary period has been completed, then such discharge must be for a cause. Any employee who has been discharged shall be entitled to receive a written statement of the reasons for such action as provided in the Personnel Ordinance and these rules."

employees have a right to appeal to the personnel board. (Personnel ordinance, § 12 (b), § 13 (a); resolution, rule XVI, §§ 1 and 2.)[6]

An alternative method of reviewing the city manager's disciplinary decisions has been created for members of the police association. Pursuant to the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.), the city manager and the association have negotiated and executed a supplemental "memorandum of understanding" (memorandum agreement), which the city council has ratified.[7] Under the agreement, if the

---

[6]Personnel ordinance, section 12 (b): "Any employee in the competitive service who has been demoted, dismissed or reduced in pay, shall be entitled to receive a written statement of the reasons for such action within three days, and he shall have three days' time thereafter within which to answer in writing thereto. Copies of such charges and answer shall be filed with the Chairman of the Personnel Board and the City Manager. Within ten days from the date of filing his answer to the written charges, or in the event such written charges have not been made available to him within the time prescribed, then within ten days after the action taken to demote, dismiss, or reduce the pay of the employee, he may file a written demand with the Chairman of the Personnel Board requesting a hearing before the Board. The Board shall then investigate the case and conduct a hearing as provided by Section 13 of this ordinance and by the rules established hereunder."

Personnel ordinance, section 13 (a): "The Personnel Board shall have the right to investigate any complaint made by an employee in the competitive service relative to any situation affecting his employment status or conditions of employment except in those instances where the right of appeal is prohibited by this ordinance. The rules established hereunder shall set forth the procedure for the hearing of complaints made by employees in the competitive service."

Resolution, rule XVI:

"Section 1. COMPLAINTS:

"Any employee in the competitive service shall have the right to appeal to the Personnel Board relative to any situation affecting his employment status or conditions of employment, except in instances where the right of appeal is prohibited by the Personnel Ordinance or these rules. Complaints and requests should first be made through channels to the department head, then to the Personnel Director, and then to the City Manager. After the complaint has been presented to the City Manager through the proper channels and if it has not been satisfactorily adjusted, the employee may appear before the Personnel Board at any of its public meetings to request a hearing of his complaints, or such complaint may be filed in writing with the Director of Personnel. It shall be the duty of the Director of Personnel to inform each of the Board members, the City Manager, the department head or other persons complained against of the filing and contents of the complaint with the Board.

"Section 2. INVESTIGATIONS AND HEARINGS:

"Upon the receipt of any complaint, the Personnel Board shall make such investigation as it may deem necessary. In cases where the employee is entitled to a hearing as a matter of right, such as in instances of demotion, reduction or discharge, and in other cases whenever the Board shall deem it advisable to hold a hearing, such hearing shall be held within twenty (20) days after the request for the hearing was made. In all hearings, the applicable provisions of the Personnel Ordinance shall apply."

[7]The memorandum agreement provided in pertinent part:

"GRIEVANCE PROCEDURE

"1. A grievance is any dispute which involves the interpretation, application, claimed violation or claimed noncompliance with the provisions of the Memorandum of

parties are unable to come to terms, the matter is submitted to a six-member "adjustment board," composed of an equal number of city and association representatives. (Memorandum agreement, § 2 (d).) If a majority of the adjustment board cannot agree on a resolution of the dispute, it may be referred to an impartial arbitrator. (*Id.*, § 2 (e).) When the grievance concerns suspension or discharge, the arbitrator's decision is final and binding "to the extent permitted by the Charter of the City." (*Ibid.*)

Appellants contend that the memorandum agreement does not conflict with any provision of the city charter. Therefore, appellants assert that the agreement was binding once it was adopted by the city council. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 334-338 [124 Cal.Rptr. 513, 540 P.2d 609].)

To its credit, the city does not argue otherwise. It properly concedes that its charter permits it to agree to arbitrate grievances relating to employee discipline.[8] However, the city contends that in this particular arbitration, both the memorandum agreement and the submission agreement (see p. 445, *ante*) were improperly interpreted and applied in a way which conflicted with the city charter.

---

Understanding between the City and the Association, or of any City Ordinance, Rule or Regulation which may have been or may hereafter be adopted by the City to govern personnel practices or working conditions of the Berkeley Employees covered by such Memorandum of Understanding. . . .

" . . . . . . . . . . . . .

"2. Grievances shall be processed in the following manner:

" . . . . . . . . . . . . .

"d. In the event the parties hereto are unable to reach a mutually satisfactory accord on any grievance . . . which arises and is presented during the term of this Memorandum of Understanding, such grievance shall be submitted to an Adjustment Board comprised of three (3) Association Representatives and three (3) representatives of the City.

"e. If an Adjustment Board is unable to arrive at a majority decision or if for any other reason forty-five (45) days have elapsed from the date upon which the grievance was received by the Director of Personnel, either the Association or the City may require that the grievance be referred to an impartial arbitrator, who shall be designated by mutual agreement between the Association and the City Manager.

" . . . . . . . . . . . . .

"Adjustment Board and Arbitrator decisions on matters properly before them which pertain to the suspension or discharge of an employee shall be final and binding on both parties hereto, to the extent permitted by the Charter of the City."

[8]Notwithstanding the lack of dispute between the parties on this issue, the concurring and dissenting opinion argues *sua sponte* that the charter prohibits the city from agreeing to arbitrate disciplinary grievances. Thus, the concurring and dissenting opinion goes beyond even what the city has argued in seeking to nullify the arbitrator's award in this case.

At the outset, it is important to set forth the arbitrator's duties in this case. Under the memorandum agreement, an arbitrator's task is to resolve "grievances," which include any dispute involving the interpretation or application of city rules or regulations governing personnel practices or working conditions. (Memorandum agreement, § 1; see fn. 7, *ante.*) One rule requiring interpretation and application in this arbitration was police regulation 106, which provides that an officer's violation of departmental regulations "may be considered sufficient cause for discharge, suspension, demotion, or other penalty."

■ Under the submission agreement, arbitrator Eaton was to decide whether Crane had been "properly discharged" according to city rules. In view of police regulation 106, Eaton interpreted that agreement as authorizing him to determine not only whether Crane had violated departmental regulations, but also whether a finding of violation provided *sufficient cause* for his removal. Appellants assert that Eaton was authorized by the agreements to resolve both issues, while respondents contend that his authority ended with his resolution of the first issue against Crane.

As a rule, courts defer to arbitrators in determining the extent and meaning of arbitration agreements. (*Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 690 [72 Cal.Rptr. 880, 446 P.2d 1000].) Although an award may be vacated if the arbitrator has exceeded his powers (Code Civ. Proc., § 1286.2), ambiguities in the scope of arbitration are resolved in favor of coverage. (*Morris* v. *Zuckerman, supra,* 69 Cal.2d at p. 690; *East San Bernardino County Water Dist.* v. *City of San Bernardino* (1973) 33 Cal.App.3d 942, 953 [109 Cal.Rptr. 510].) Since the question submitted to Eaton was not limited to whether Crane had violated police regulations, these principles justify upholding Eaton's view of what was arbitrable under the agreements.

■ The city points out that it agreed to arbitrate grievances only "to the extent permitted by [its] Charter . . . ." (Memorandum agreement, § 2 (e); see fn. 7, *ante.*) The city argues that its charter does not permit arbitration of the question of the proper penalty for an employee who has violated city rules. That discretion is reserved by the charter to the city manager, who may not assign it to another party.

Settled principles of construction compel rejection of this claim. A city charter is construed to permit the exercise of all powers not expressly limited by the charter or by superior state or federal law. (*City of Grass*

*Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 598-599 [212 P.2d 894].) Restrictions on a charter city's powers may not be implied. (*Miller* v. *City of Sacramento* (1977) 66 Cal.App.3d 863, 867-868 [136 Cal.Rptr. 315].) It has long been recognized that a city may agree to arbitrate any matter which could be the subject of civil suit. (*Cary* v. *Long* (1919) 181 Cal. 443, 448 [184 P. 857].) Discipline of a permanent city employee is such a matter. (Code Civ. Proc., § 1094.5; see, e.g., *Perea* v. *Fales* (1974) 39 Cal.App.3d 939 [114 Cal.Rptr. 808].) Thus, unless the charter expressly prohibits the city from agreeing to arbitrate whether Crane's conduct was sufficient cause for his discharge, the city retains the power to do so.

The charter contains no such prohibition. It is true that article VII, section 28 gives the city manager the power and duty to "appoint, discipline or remove all . . . subordinate officers and employees of the City, subject to the civil service provisions of this Charter." It is also true that the charter's civil service provisions authorize creation of a personnel board (charter, former art. IX, § 56), to which disciplined employees may appeal. (Personnel ordinance, §§ 12, 13; resolution, rule XVI; see fns. 3 and 6, *ante.*) However, there is no provision in the charter barring the creation of an alternative form of appeal, such as arbitration.

Accordingly, article VII, section 28 of the charter may be harmonized with the arbitration agreements. Section 28 vests in the city manager the *initial* discretion to determine the proper sanction for violation of city rules. The agreements at issue here do not remove that initial discretion. Instead, they subject it to binding review by an impartial arbitrator. (See *Fugitt* v. *City of Placentia* (1977) 70 Cal.App.3d 868, 875 [139 Cal.Rptr. 123].) Under the principles of construction set forth above, the grant of disciplinary power in section 28 may not be construed as a limitation upon the city manager's authority to agree to such review.[9]

[9]The concurring and dissenting opinion cites *Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22 [132 Cal.Rptr. 668, 553 P.2d 1140] and *California Sch. Employees Assn.* v *Personnel Commission* (1970) 3 Cal.3d 139 [89 Cal.Rptr. 620, 474 P.2d 436] for the proposition that a public official may not delegate discretionary functions without legislative authorization. Neither case is apposite. As discussed at pages 452-453, *post, Bagley* involved arbitration of general policy matters, not grievance arbitration. *California Sch. Employees* involved neither arbitration nor any delegation. There, a public employee's dismissal was initiated by the wrong agency. It was held that the employee should be reinstated since improper procedures had been followed. This court expressly declined to decide whether there had been any improper delegation of the authority to initiate dismissals. (3 Cal.3d at p. 145.)

In the present case, had the city manager ceded his initial discretion concerning employee discipline to an arbitrator, a question of unlawful delegation would be presented. In fact, however, the city manager did not delegate that discretion but exercised it himself.

The same reasoning applies to article VII, section 28, subdivision (c) of the charter. That subdivision provides that the city manager shall have the power "[t]o exercise control over all departments, divisions and bureaus of the City Government and over all appointive officers and employees thereof." This provision vests control over city employees in the city manager *as opposed to* the city council or other city officials. Such a grant of initial control to one officer may not be read to limit his authority to agree to subject his disciplinary decisions to review by an arbitrator.

Further, the city has conceded that the city manager's control over employee relations does not bar arbitration over whether cause exists for an employee's discharge. The city agrees that an arbitrator may play this central role in the disciplinary process without intruding on the city manager's control. Once an arbitrator's significant participation in the disciplinary process is accepted, nothing on the face of section 28, subdivision (c) requires that his role be limited in the manner asserted by the city.

This conclusion is reinforced by public policy considerations. ██ A favored means of resolving labor disputes in this state, arbitration eases the burdens on courts while resolving disputes quickly and inexpensively. (See *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 622 [116 Cal.Rptr. 507, 526 P.2d 971]; *Vernon* v. *Drexel Burnham & Co.* (1975) 52 Cal.App.3d 706, 715 [125 Cal.Rptr. 147].) For these reasons, where a city charter or ordinance may be construed to authorize grievance arbitration of broad scope, that construction is preferred.

██ The city argues that allowing an arbitrator the final word on the propriety of discharge would "unlawfully delegate" the city manager's discretion in personnel matters. However, since the city manager retains the significant power to initially impose discipline, there has been no "total abdication" of his disciplinary authority. (*Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 384 [71 Cal.Rptr. 687, 445 P.2d 303].) Further, even if some portion of the city manager's powers is viewed as having been delegated, the exercise of that portion of authority is subject to adequate judicial safeguards. (See Code Civ. Proc., § 1286.2; *Kugler, supra,* at pp. 379-381.) Under the principles of *Kugler,* there has been no unlawful delegation of the city manager's powers.

The city's reliance on *Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22 [132 Cal.Rptr. 668, 553 P.2d 1140] and *San Francisco Fire*

*Fighters* v. *City and County of San Francisco* (1977) 68 Cal.App.3d 896 [137 Cal.Rptr. 607], is misplaced. In *Bagley,* this court held that the statutory duty of a general law city to fix compensation for its employees could not be delegated to an arbitrator when impasses in salary negotiations arose. In *San Francisco Fire Fighters,* the Court of Appeal held that a city agency's charter power to make rules governing the conduct of city fire fighters could not be assigned to an arbitrator. Thus, both cases involved the submission to arbitration of a *general policymaking power* to determine the terms and conditions of employment.

The power to set the terms and conditions of public employment is broader and more intrusive upon the functions of city government than the arbitrator's authority in this case to resolve an individual grievance. ■ Grievance arbitration does not involve the making of general public policy. Instead, the arbitrator's role is confined to interpreting and applying terms which the employer itself has created or agreed to and which it is capable of making more or less precise. (Grodin, *California Public Employee Bargaining: The MMB Act in Relation to Local Charters and Ordinances* (1978) Cal. Pub. Employee Rel. No. 36, at p. 7.) In view of the more restricted role of arbitration in this case, this court finds no unlawful delegation of municipal powers of the kind existing in *Bagley* and *San Francisco Fire Fighters.*

### III

Arbitrator Eaton's decision that Inspector Crane's conduct warranted suspension but not discharge was within the scope of the question submitted to him and the terms of the city's memorandum agreement on arbitration. Further, Eaton's decision did not conflict with any express provision of the Berkeley City Charter. For these reasons, the arbitration order and award were binding on the city.

The judgments are reversed and the trial court is directed to enter judgments confirming the arbitrator's findings and order of suspension and denying respondents' prayer for declaratory relief.

Tobriner, J., Mosk, J., and Newman, J., concurred.

**RICHARDSON, J.,** Concurring and Dissenting.—I concur in the judgments, but for reasons quite different from those of the majority. Under the Berkeley City Charter, as currently worded, nonjudicial limitations on

the city manager's absolute power and discretion to discharge public employees are governed exclusively by the established civil service ordinance, rules and regulations adopted by authority of the charter. Hence, that power cannot be further delegated or circumscribed in a negotiated memorandum of understanding which provides an arbitration process directly contrary to governing law.

Article VII, section 28, of the charter vests the city manager with the "power and duty" to "appoint, discipline and remove" subordinate city employees, without interference by the city council or its agents, and "subject to the civil service provisions of this Charter." As the majority concedes, these "civil service provisions" (now art. XVI, § 119) authorize establishment of a "personnel system" to be "administer[ed]" by a "personnel board" under "rules and regulations to be made by the council."

Fairly read together, these charter provisions give the city manager *sole* authority over hiring and firing, subject *only* to action by a *personnel board* (board) which supervises the civil service system under the council's *rules and regulations.* The council's power to delegate or circumscribe the city manager's disciplinary authority is thus *limited* by the terms of the charter, the "supreme" law of the city. (See *Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 496 P.2d 1248]; *Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22, 26 [132 Cal.Rptr. 668, 553 P.2d 1140].)

From the foregoing it seems apparent that the charter may not prevent the council from establishing, through properly adopted ordinances and rules, a *board-supervised* grievance procedure utilizing arbitration. The council, however, has chosen to implement the charter in another way. The city's personnel ordinance (Ord. No. 2342-NS, hereafter ordinance) confirms the city manager's authority over "transfers, promotions, demotions, reinstatements, layoffs," suspensions and dismissals of covered employees, "subject to" the provisions of the ordinance and subordinate rules and regulations (rules). (§ 4.) In turn, the rules (Res. No. 34,480-NS) state that employees may be discharged "at any time by the City Manager" for cause. (Rule XV, § 1.) Considered together, the ordinance and rules invest the *board* with power to investigate and hear employee disciplinary matters. (Ord., §§ 12, 13(a); rules XV, § 1, XVI.) The ordinance clearly provides that the rules are to "govern" dismissal of employees (§ 6(h)) and "shall set forth *the* procedure for the hearing of

complaints made by employees in the competitive service." (§ 13(a), italics added.) Nowhere in the charter, ordinance or rules is provision made for binding arbitration of employee grievances.

The charter, ordinance and rules thus clearly establish that the city manager's sole disciplinary authority is reviewable *only* by the board. The memorandum of understanding, on the other hand, routes grievances by members of appellant association through a separate "adjustment board" and ultimately to binding arbitration. The personnel board is nowhere involved. Thus, as the majority concedes, the memorandum agreement completely bypasses the disciplinary procedures provided under the civil service system.

Official acts which conflict with a city's charter are void. (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 923-924 [120 Cal.Rptr. 707, 534 P.2d 403]; *Brown* v. *City of Berkeley* (1976) 57 Cal.App.3d 223, 230-233 [129 Cal.Rptr. 1].) A public agency *or officer* may not delegate discretionary functions in the absence of appropriate legislative authorization. (*Bagley* v. *City of Manhattan Beach, supra,* 18 Cal.3d at pp. 24-25; *California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 144 [89 Cal.Rptr. 620, 474 P.2d 436].) A public employer may not negotiate employee benefits which directly conflict with a statute (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 814 [135 Cal.Rptr. 386, 557 P.2d 970]) or charter (*City and County of San Francisco* v. *Cooper, supra,* at pp. 919-924) even where, as here, the negotiations take place under "meet and confer" provisions of a state law governing public sector labor relations (*id.,* at p. 922). In fact, the Meyers-Milias-Brown Act, under which the instant memorandum agreement was negotiated, expressly provides that it *does not supersede local charters, ordinances and rules governing merit of civil service systems.* (Gov. Code, § 3500.)

The majority stresses the fact that the *city manager himself* negotiated and approved both the original memorandum of understanding and the submission agreement under which this case was subjected to arbitration. However, as the foregoing cases explain, the no-delegation doctrine applies with as much force to the improper allocation by a public *executive* of his *administrative* powers, as to the surrender by a *governing body* of its *legislative* control. (*Ibid.*)

The majority insists that the charter invests only "initial" discretion over discipline in the city manager, and does not expressly preclude the

council or city manager from ratifying arbitration as a means of *reviewing* that discretion, which would in any event be subject to judicial scrutiny. This interpretation must be adopted, the majority declares, in deference to the policy favoring arbitration.

I cannot agree. The charter does indeed vest initial discretion in the city manager. However, contrary to the majority's view, that document, together with its implementing ordinance and rules, *unambiguously limits the ways in which that discretion may be delegated or circumscribed.* Though a public entity may normally agree to binding arbitration in lieu of judicial review (see Code Civ. Proc., § 1281; *Viola, Inc.* v. *Santa Barbara High Sch. Dist.* (1969) 276 Cal.App.2d 425, 427-428 [80 Cal.Rptr. 784]), here the exclusive procedures for nonjudicial appeal are set forth in the city's laws and arbitration is not included. (*Bagley, supra,* 18 Cal.3d at p. 26.) There may be, as the majority contends, valid policy reasons for compulsory arbitration, and the people of Berkeley may be well advised to authorize it. But they have not done so yet.

The majority asserts that the memorandum of understanding simply creates an "alternate method" of grievance resolution applicable only to association members. The problem presented by the argument, however, is that the city's personnel ordinance *expressly includes police officers* among the employees covered by *its* provisions. (§ 7.)

Appellants do not suggest that the ratification of the memorandum of understanding substantially conformed to the requirements for any amendment of governing law. (See *City and County of San Francisco* v. *Cooper, supra,* 13 Cal.3d 898, 931; *Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 639 [12 Cal.Rptr. 671, 361 P.2d 247]; *City and County of S.F.* v. *Boyd* (1943) 22 Cal.2d 685, 692 [140 P.2d 666].) Indeed, the ordinance, besides establishing the board's sole jurisdiction over grievances, requires the board's *participation* in any amendment of the civil service rules. (§§ 5(c), 6.) The charter, of course, may only be amended by vote of the people. (Gov. Code, § 34459.)

The majority emphasizes the city's "concession" that preliminary fact-finding, constituting a ministerial task, may properly be delegated to an arbitrator. (See, e.g., *California Sch. Employees Assn., supra,* 3 Cal.3d at p. 144.) However, where the charter so explicitly provides a different means of grievance resolution, the rule permitting ministerial delegation does not apply. In any event, at issue here is an agreement under which the *entire* issue of proper discipline is submitted to arbitration. The

majority's reasoning, that any concession of *partial* arbitrability validates this entire proceeding, is manifestly improper.

The majority describes arbitration as a promising means of resolving public sector labor disputes. However, the citizens of Berkeley have chosen another method of administering their civil service system. They have opted for a procedure in which the lines of disciplinary authority are clear and grievances are fairly and efficiently resolved by a single expert agency applying *uniform* standards. These goals may also represent desirable public policy. (See, e.g., *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 641 [234 P.2d 981].) It is not for us, as judges, but for the people themselves, to decide the contrary. I would conclude that the arbitration procedure provided in the memorandum of understanding contravenes the charter and ordinances of the City of Berkeley, and is therefore void.

I believe, however, that, on the particular facts of this case, the city is equitably estopped to deny liability under the arbitration award. Through its council, the city purported to ratify the original memorandum of understanding. The city manager executed an agreement submitting this case to arbitration; contrary to the city's position, the agreement clearly placed the entire matter of proper discipline of appellant Crane before the arbitrator. Under these circumstances, appellants could reasonably rely on the city's apparent authority and intent to cooperate. In doing so, they forfeited other avenues of administrative and judicial review which were available to them.

No public policy is served by preventing confirmation of the award in this case. Accordingly, I concur in the judgments of reversal. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493-501 [91 Cal.Rptr. 23, 476 P.2d 423].)

Clark, J., and Manuel, J., concurred.