**Bruce ROSS, Appellant,**

v.

**CITY OF SAND POINT, Appellee.**

No. S–7599.

Supreme Court of Alaska.

Jan. 16, 1998.

Rehearing Denied March 10, 1998.

Kenton K. Pettit, Bogle & Gates, P.L.L.C., Anchorage, for Appellant.

Thomas M. Daniel, Perkins Coie, Anchorage, for Appellee.

Before MATTHEWS, C.J., and EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This appeal arises from the City of Sand Point's decision to terminate Bruce Ross as public works director. Ross challenged the City's decision through the City's grievance procedures, and a grievance committee decided that Ross should be "returned to work." The City's mayor subsequently offered to return Ross to a position subordinate to the public works director, and Ross filed suit in superior court alleging wrongful discharge and breach of the implied covenant of good faith and fair dealing. The superior court granted summary judgment in favor of the City on both claims. Because we conclude as a matter of law that Ross was wrongfully terminated from his position as public works director, we reverse.

## II. FACTS AND PROCEEDINGS

The crucial facts underlying this litigation are undisputed. Bruce Ross worked as the public works director for the City of Sand Point, reporting directly to Mayor Alvin Osterback. On the afternoon of Friday, February 4, 1994, during regular working hours, the mayor went to Ross's home and discovered Ross consuming beer with Derryl Koso, a Department of Public Works employee. The mayor instructed Ross and Koso to be in his office first thing Monday morning.

After returning to his office from Ross's home, the mayor learned that Ross was on leave that afternoon, having used compensatory time to have a partial day off. The mayor could not locate a record of Derryl Koso being on leave.

Based on his conclusion that Ross had been drinking alcohol "with an employee under [his] direct supervision while that employee was supposed to be and should have been working," the mayor fired Ross. In a letter informing Ross of his termination, the mayor explained that Ross's conduct on February 4 was "unbecoming of a person who is responsible for a department of the city." The letter also informed Ross that he could grieve the mayor's decision to fire him under the provisions of the City of Sand Point Personnel Policies and Procedures Manual.

On February 11 Ross filed a grievance pursuant to the City's personnel manual.[1] During the hearing, Ross explained that he had allowed Koso to take the afternoon of February 4 off to study for an upcoming work-related examination. Subsequently, Koso went to Ross's house to be tutored for the examination, met Ross and one of Ross's neighbors, and consumed beer. Based on

---

1. Section XVI of the personnel policy manual explains the grievance process. The manual provides in relevant part:
   B. *Steps for handling of grievances.*
   1. The grievance of any employee shall be handled in the following manner, each step to be taken only if a satisfactory adjustment cannot be obtained on the previous level within five working days of the presentation of the grievances to that level.

2. Failure to follow the procedure outlined below will render the grievance invalid:
   A. To the employee's immediate supervisor;
   B. To a grievance committee ...
   C. To the City Council whose decision shall be final and binding unless there is judicial review of the case.

these facts, the grievance committee ruled in Ross's favor, deciding that "Ross should be returned to work because the policy regarding leave in the City Personnel Policy was vague."

Despite the grievance committee's decision, the mayor did not reinstate Ross as public works director. Instead, he informed Ross:

> I strongly disagree with the grievance committee, but I will abide by its decision. I am not bound, however, to let the matter go unnoticed, nor am I bound to reinstate you into the position of public works director. I do not consider it to be in the best interests of the city for you to continue as the public works director.

The mayor then offered Ross a position as "leadman,"[2] warning him that he would consider Ross to have resigned from his job if he did not accept the position by March 1. Ross did not report to work by March 1, and the City terminated his employment on grounds that he had resigned.

After the City terminated Ross, he claimed unemployment benefits from the Alaska Employment Security Division. The City argued that Ross was not entitled to benefits because he had voluntarily resigned. The Alaska Employment Security Division's Appeal Tribunal disagreed and found in Ross's favor. The Commissioner of the Department of Labor affirmed.

Ross also filed an action in the superior court, alleging two causes of action: wrongful discharge and breach of the implied covenant of good faith and fair dealing. Ross moved for summary judgment on the latter cause of action on grounds that the City had failed to honor the grievance committee's decision. The City filed a cross-motion for summary judgment on both causes of action. It argued that a wrongful discharge analysis was inappropriate because Ross had voluntarily resigned and that the City had not breached the implied covenant of good faith and fair dealing because the mayor's statutory authority to remove municipal officials superseded the grievance committee's ruling.

Superior Court Judge John Reese denied Ross's motion and granted the City's motion. Judge Reese ruled that the facts did not support a wrongful discharge claim because Ross had voluntarily resigned by not reporting for work as a leadman. Judge Reese also ruled that the City had not breached the implied covenant of good faith and fair dealing, stating that the grievance committee's decision did not specify the job to which Ross should have been returned and that AS 29.20.500(1) granted the mayor the authority to remove and appoint municipal employees. Ross unsuccessfully moved for reconsideration, and this appeal followed.

## III. DISCUSSION

### A. Standard of Review

■ "Summary judgment will be affirmed if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law." *Great Am. Ins. Co. v. Bar Club, Inc.,* 921 P.2d 626, 627 (Alaska 1996). All reasonable inferences of fact must be drawn against the moving party and in favor of the nonmoving party. *See Taranto v. North Slope Borough,* 909 P.2d 354, 355 (Alaska 1996). In reviewing questions of law, this court applies its independent judgment and adopts "the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### B. Did the City of Sand Point Wrongfully Discharge Ross?

■ An employer who fires an employee in violation of the terms of an employment contract is liable for wrongful discharge. *See Eales v. Tanana Valley Medical–Surgical Group, Inc.,* 663 P.2d 958, 959 (Alaska 1983) (ruling that an employee who alleges that he was fired without cause in violation of the terms of his contract has a claim of wrongful discharge). The mayor's refusal to reinstate Ross as director of public works, despite the decision of the grievance committee, violated

---

2. In theory, a leadman receives the same pay as the public works director. The leadman's salary, however, is based on an hourly rate. Moreover, as leadman, Ross would have to report to the new public works director and, according to Ross, would receive fewer benefits.

Ross's contract with the City and constituted wrongful discharge as a matter of law.

█ The City concedes that the personnel manual, including the grievance process, was part of Ross's employment contract. The personnel manual therefore modified Ross's contract by providing that he would not be fired if he successfully appealed his supervisor's decision. *See Jones v. Central Peninsula Gen. Hosp.*, 779 P.2d 783, 787 (Alaska 1989) (holding that whether a personnel policy manual modifies an employment contract is a question of fact).

Ross did successfully appeal the mayor's decision to fire him as the grievance committee ruled that he "should be returned to work because the policy regarding leave in the City Personnel Policy was vague." Webster's dictionary defines "return" as "to go back or to come back again. . . ." *Webster's Third New International Dictionary* 1941 (1966). One can only "go back" to a place where one has already been. Thus, when the grievance committee instructed that Ross should be "returned to work," the only position to which he could return was the position he had already occupied: director of public works. In addition, any ambiguity in the term "return" disappears upon consideration of the facts of this case. Ross initiated the grievance procedure because he felt that he had been fired unfairly and wanted his job back. In this context, the committee's order that he be "returned to work" can only be interpreted as requiring the mayor to reinstate him as director. In fact, the City concedes that Ross's interpretation of the committee's decision is reasonable. Nevertheless, it urges us to ignore the mayor's refusal to abide by the outcome of the grievance process.

█ Relying on Title 29 of the Alaska Statutes and the Sand Point Municipal Code ("SPMC"), which grant the mayor the power to "appoint, reassign, and remove city employees," the City claims that the mayor has the right to veto decisions reached by the grievance committee. In essence, the City argues that the statutes grant the mayor the power to ignore the terms of the employment contracts entered into by the City. We disagree.

Under AS 29.20.250(a), the mayor of a city that has not adopted a manager plan of government, which the City of Sand Point has not, has the same powers and duties as those of a manager under AS 29.20.500. Alaska Statute 29.20.500, in turn, provides:

[The mayor] shall

(1) appoint, suspend, or remove municipal employees and administrative officials, *except as otherwise provided in this title* and AS 14.14.065;

. . . .

(7) serve as personnel officer. . . .

(Emphasis added.) This statute is essentially identical to SPMC § 2.30.010(b), which provides:

The mayor shall

(2) Suspend or remove by written order city employees and administrative officers, *except as provided otherwise;*

. . . .

(10) Execute other powers and duties specified in AS Title 29 . . . .

(Emphasis added.) Despite the City's arguments to the contrary, these provisions do not authorize the mayor to override the decisions of the grievance committee.

█ Although AS 29.20.500(1) and SPMC § 2.30.010(b)(2) permit the mayor to suspend or remove employees, they do not give him the power to ignore the result of a grievance process that has been incorporated into an employment contract. In interpreting a statute, we look first to its language. *See Lagos v. City and Borough of Sitka*, 823 P.2d 641, 643 (Alaska 1991). Alaska Statute 29.20.500 and SPMC § 2.30.010(b) specifically limit the mayor's power with the language "except as otherwise provided in this title" (AS 29.20.500) and "except as provided otherwise" (SPMC § 2.30.010(b)).

Fitting within this exception to AS 29.20.500, AS 29.20.410(a) modifies the mayor's power because it authorizes the "governing body" of the City to "provide for a personnel system." Pursuant to this provision, the City adopted the "Personnel Policies and Procedures Manual." The manual nowhere provides that the decision of the grievance

process is merely advisory and that the mayor can override it if he sees fit. Therefore, pursuant to AS 29.20.410(a), the mayor must exercise his power to remove or reassign employees subject to the grievance committee's decisions. *See Benner v. Wichman*, 874 P.2d 949, 957 (Alaska 1994) (stating "[w]henever possible, we construe each part or section of a statute with every other part or section, to produce a harmonious whole").

Similarly, the personnel manual fits within the "except as provided otherwise" language of SPMC § 2.30.010(b). Unlike AS 29.20.500, SPMC § 2.30.010(b) does not require exceptions to be contained within the same title. *Compare* AS 29.20.500(1) *with* SPMC § 2.30.010(b)(2). Therefore, the personnel manual also limits the mayor's power under SPMC § 2.30.010(b).[3]

The statutory provisions relied upon by the City do not support its argument that the mayor has the power to ignore the terms of employment contracts entered into by the City. Instead, AS 29.20.500 and SPMC § 2.30.010(b) merely allow the mayor to make initial decisions regarding reassignment and termination. *See Taylor v. Crane*, 24 Cal.3d 442, 155 Cal.Rptr. 695, 595 P.2d 129, 134–35 (1979) (interpreting similar statutory language and concluding that it "vests in the city manager the *initial* discretion to determine the proper sanction for violation of city rules") (emphasis in original). These decisions remain subject to review by the grievance process, as adopted in the City's personnel manual pursuant to AS 29.20.410(a). *See id.*, 155 Cal.Rptr. at 702, 595 P.2d at 136 (upholding an arbitrator's ruling that a police officer who had been discharged should be reinstated where a collective bargaining agreement between the police and the City provided for arbitration of grievances).

**3.** The City's interpretation of the power granted to the mayor is also inconsistent with another provision of the Sand Point Municipal Code that designates several positions as serving "at the pleasure" of the City Council, but nowhere indicates that the public works director serves "at the pleasure" of the mayor. *See* SPMC §§ 3.20.010, 3.30.010, 3.50.010.

## IV. *CONCLUSION*

By refusing to reinstate Ross as director of public works despite the decision of the grievance committee, Mayor Osterback violated the terms of Ross's employment contract, which provided that he would not be fired if he prevailed in the grievance process. The mayor's actions constituted wrongful discharge as a matter of law. The decision of the trial court is therefore REVERSED and the case is REMANDED for further proceedings consistent with this opinion.[4]

COMPTON, J., not participating.

**4.** On appeal, Ross also argued that the City had breached the implied covenant of good faith and fair dealing and violated his rights to due process by failing to reinstate him as public works director. Because we conclude that Ross was wrongfully discharged as a matter of law, we do not reach these other issues. For the same reasons, we also do not address the parties' constructive discharge arguments.