[No. AO16366. First Dist., Div. One. Mar. 19, 1984.]

ALISON BRENNAN, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF THE CITY AND COUNTY
OF SAN FRANCISCO et al., Defendants and Respondents.

COUNSEL

Geoffrey Rotwein and Ruffin & Rotwein for Plaintiff and Appellant.

George Agnost, City Attorney, Burk E. Delventhal and Thomas J. Owen, Deputy City Attorneys, for Defendants and Respondents.

OPINION

ELKINGTON, Acting P. J.—Plaintiff Alison Brennan appeals from a "postjudgment order filed . . . February 2, 1982, denying [her] request for attorneys fees" which attorney fees had been sought pursuant to Code of Civil Procedure section 1021.5, and article VII, chapter 7, section 7.700 (hereafter section 7.700) of the Charter of the City and County of San Francisco (hereafter sometimes, City).

Section 570 of the City's Administrative Code provides for a Ballot Simplification Committee, "which is a body of communications experts; section 5.71 of the code empowers the Committee to prepare digests for all munic-

ipal ballot propositions; section 5.79 simply directs that each voter information pamphlet mailed to voters contain '[a] copy of the digest of each measure as prepared by the Committee.' [¶] Section 5.73 of the San Francisco Administrative Code specifies the following format for all ballot proposition digests: 'Each digest of a measure shall include four identifying subsections. These shall be entitled and shall appear in the following sequence in the ballot pamphlet in bold face: Headline, The Way it is Now, A "Yes" Vote Means, A "No" Vote means. [¶] Each digest shall be limited to a maximum of 300 words exclusive of the title for each subsection provided for herein.' " (See *Brennan* v. *Board of Supervisors,* 125 Cal.App.3d 87, 90, fn. 1.)

In 1978, a summary of "Proposition U," entitled "San Francisco Renters Property Tax Rebate Ordinance of 1978," was prepared by the Ballot Simplification Committee (hereafter Committee). Plaintiff Brennan, as a citizen and taxpayer, deeming the summary inadequate, challenged it by a superior court application for a writ of mandate. The superior court agreed, and enjoined distribution of the customary voter's information pamphlet containing the summary. A modified version of the summary, prepared by the Committee, was thereafter rejected by the court, which prepared its own "revised analysis" of "Proposition U," and ordered it included in the voter's pamphlet.

This reviewing court, on the City's petition, set aside the superior court's pretrial order.

The superior court proceedings continued, however. On October 13, 1978, judgment was entered enjoining the City from distributing the voter's pamphlet, until the Committee's summary of Proposition U had been modified in accordance with the superior court's revised digest. The City appealed the judgment, which had the effect of staying it pending the appeal. The voter's pamphlet, with the Committee's modified digest of Proposition U, was accordingly distributed to the City's electorate, which on the ensuing election day defeated the proposition.

Although the City's appeal from the judgment thus became moot, we rejected the City's mootness argument based upon Brennan's contention that the case presented an issue of recurring significance and continuing public interest.

Our decision and opinion on the appeal were filed October 1, 1981. They are reported as *Brennan* v. *Board of Supervisors* (1981) 125 Cal.App.3d 87, 96-97 [177 Cal.Rptr. 677], to which reference is hereby made. It is sufficient here to point out that we there stated:

"We conclude that the Committee's ballot summary, while technically imprecise, omitted only auxiliary or subsidiary matters, fairly represented the measure and thus was in substantial compliance with the law. . . . However, while we find error in the trial court's order prohibiting distribution of the Committee's summary and preparation of its own 'Revised Analysis' for dissemination, such error would not necessitate reversal even if this case were still of practical significance. [¶] Injury is not presumed from error; it must be affirmatively shown. . . . Although the Committee's digest was satisfactory and could have been lawfully distributed to San Francisco voters, the trial court's 'Revised Analysis'—which the voters [did not receive]—was a more accurate and thorough summary. Thus, it cannot be said that appellants were damaged by the trial court's order. In fact, if anything, the goal of distributing an unbiased, complete summary of Proposition U—a goal which must interest appellants as much as respondent—was advanced, rather than hindered, by the actions of the trial court. Since no miscarriage of justice resulted from any error committed by the trial court, reversal of the judgment is not warranted. . . .

"The judgment is affirmed."

■ As noted, plaintiff Brennan, upon her subsequent application for attorney fees, relied upon Code of Civil Procedure section 1021.5, and section 7.700 of the City's charter.

Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a *successful party* [italics added] against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

The City's charter provision (section 7.700) states: "In the event that a taxpayer of the city and county institute suit or other proceeding as provided by law against any officer, board or commission of the city and county in the name of said taxpayer on behalf of the city and county, *if judgment be finally entered in his favor* [italics added] he shall be allowed his costs and also such reasonable compensation for attorney's fees as may be fixed by the court."

These statutes are in *pari materia* with each other, and with "a variety of newly enacted attorney fee provisions" of Acts of Congress. (See *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 931, 934 [154 Cal.Rptr. 503, 593 P.2d 200].) They have their seed in principles of equity (*idem.*, pp. 924, 929, 938, 943), and may apply where a private litigant has vindicated *"an important right affecting the public interest."* (*Idem.*, p. 925.)

█ We are further instructed by *Woodland Hills Residents Assn., Inc.* v. *City Council, supra* (which must reasonably be deemed the leading case on the instant issue), that reviewing courts are *not* "in a position to decide the question [of propriety of attorney fees] in the first instance," and that the trial court is best fitted to determine whether "an attorney fee award is appropriate in order to assure the effectuation of an important public policy." (23 Cal.3d at pp. 941, 942.)

And the high court in *Woodland Hills* has provided guidelines for the trial court in such a task.

The trial court will "determine whether the right vindicated in a particular case is sufficiently 'important' to justify [an attorney] fee award." (23 Cal.3d at p. 935.) It will "determine the significance of the benefit . . . from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case" (23 Cal.3d at pp. 939-940). And: "[T]he trial court, utilizing its traditional equitable discretion (now codified in § 1021.5), must realistically assess the litigation and determine from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." (23 Cal.3d at p. 938.)

█ In the case before us, "the important right affecting the public interest" was, as we understand it (and as stated by plaintiff Brennan), the "right" to have the Committee's inadequate digests of ballot propositions, judicially "corrected to conform to law." Although the trial court's judgment confirming such a claimed right was thereafter affirmed by this court, as pointed out, we did so, finding the judgment *erroneous,* but not to have caused injury or prejudice to anyone.

It follows that *no* "important [or any] right affecting the public interest" was vindicated by plaintiff Brennan's action. The trial court properly so concluded on her motion for attorney fees and, under the above-noted authority of *Woodland Hills,* its order must be affirmed.

We have, of course, considered plaintiff Brennan's argument that the City's charter provision (section 7.700) is broader than Code of Civil Pro-

cedure section 1021.5, because it recites instead of "may," that in a proper case the court "shall," award attorney fees. But it will be seen that the charter section requires entry of a *"favorable"* judgment, which here may not reasonably be said to have been finally entered for plaintiff Brennan. We need not consider other responses to the instant argument.

The order of February 2, 1982 is affirmed.

Newsom, J., and Holmdahl, J., concurred.

A petition for a rehearing was denied April 18, 1984.