[Civ. No. 68342. Second Dist., Div. One. Mar. 21, 1984.]

UNITED FIREFIGHTERS OF LOS ANGELES CITY, LOCAL 112, IAFF, AFL-CIO, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Fogel, Rothschild, Feldman & Ostrov, Lester G. Ostrov, Susan R. Hershman and Mary Luppi Basich for Plaintiff and Appellant.

Ira Reiner, City Attorney, Frederick N. Merkin, Assistant City Attorney, Christine C. Patterson and Diane N. Wentworth, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**DALSIMER, J.**—Appellant, United Firefighters, appeals from an order denying its petition to compel arbitration (Code Civ. Proc., § 1281.2) of a dispute over a disciplinary suspension imposed on Captain Kenneth Buzzell. The sole issue is whether the grievance procedure provided for in the parties' memorandum of understanding applies to a matter involving an order of suspension when the suspended employee has already sought and received review by a board of rights as provided for in Los Angeles City Charter, article X, section 135.

On November 20, 1980, Captain Kenneth Buzzell, a Los Angeles Fire Department employee and a member of appellant, was notified that he was

to receive a disciplinary suspension of three working days for refusing a job assignment under the department's "assign-hire" program. In response to this notice, Captain Buzzell requested a board of rights hearing pursuant to Los Angeles City Charter, article X, section 135.

Section 135 of article X of the Los Angeles City Charter provides a mechanism for review of an order of the chief to suspend or dismiss a fire department officer. An evidentiary hearing is held before three senior officers who must determine whether the suspended or discharged employee is guilty of the charge or charges assigned as cause for the suspension or dismissal. (L.A. City Charter, art. X, § 135, subds. (1) & (12).) If the board of rights determines that the employee is guilty of the charge or charges, the board may order that the employee be reprimanded, suspended for up to six months, or dismissed. (L.A. City Charter, art. X, § 135, subd. (12).) The board of rights is free to impose a penalty greater than that originally ordered by the chief. (See *ibid.*) If a penalty is imposed by the board of rights, the chief may either execute the board's order or modify the order to impose a lesser penalty. (L.A. City Charter, art. X, § 135, subd. (13).)

In the instant case, after an evidentiary hearing the board of rights ordered that Captain Buzzell be suspended for five days, instead of the original three days ordered by the chief. The chief then modified the board of rights' order and imposed a four-day suspension.

After completion of the board of rights process Captain Buzzell initiated a grievance with regard to the four-day suspension pursuant to grievance procedures set forth in the memorandum of understanding. Captain Buzzell, represented by appellant, processed the grievance through the fourth level of review, the last stage prior to binding arbitration. At each of the stages the department responded that the purported grievance was not a proper matter for the grievance process.

Appellant then attempted to initiate arbitration of this matter. Prior to the filing of the petition herein, the department refused to participate in selection of an arbitrator, still maintaining that the suspension was not a proper subject of arbitration.

■ The trial court's decision that Captain Buzzell's four-day suspension is outside the scope of the arbitration provisions of the memorandum of understanding is not based upon extrinsic evidence and constitutes a conclusion of law. Thus, " '[w]e are free to make our own independent interpretation of the terms of the contract and its application to the instant dispute.' " (*Berman* v. *Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003 [119

Cal.Rptr. 130].)" (*Merrick* v. *Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 217 [181 Cal.Rptr. 530].)

■ The dispute centers on the meaning of one sentence of the memorandum of understanding. The crucial sentence provides: "Nothing in this grievance procedure shall be construed to apply to matters for which a remedy is provided by provisions of Section 135 of the City Charter." (Memorandum of understanding, art. 23, § II, par. 1.)

Appellant contends that this provision merely requires an employee to exhaust charter section 135 procedures prior to using the grievance procedures of the memorandum to challenge a suspension or dismissal. Respondents argue that this sentence provides an express exclusion from the grievance procedure of all suspensions or dismissals that are subject to the review proceedings of charter section 135. Although the sentence by itself appears to support the interpretation urged by respondents, we may not interpret the memorandum of understanding in isolation from the ordinance that sets forth what the memorandum must contain.

■ "[W]here a statute requires the contract to provide for certain matters, the statute becomes a part of the contract, imposing an arbitration agreement at least as broad as the statutory specifications. [Citation.]" (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341].)

■ This memorandum of understanding was undertaken pursuant to the requirements of the Employee Relations Ordinance (L.A. City Admin. Code, div. 4, ch. 8, § 4.800 et seq.). The ordinance eliminates any ambiguity; it requires the memorandum of understanding to provide for arbitration of all unresolved grievances. Los Angeles City Administrative Code, division 4, chapter 8, section 4.865, requires that a grievance procedure be incorporated into any memorandum of understanding such as the one being interpreted here. The grievance procedure "shall apply to *all* grievances" (L.A. City Admin. Code, div. 4, ch. 8, § 4.865, subd. a, italics added) and "shall provide for arbitration of all grievances not resolved in the grievance procedure." (*Ibid.*) Under the Employee Relations Ordinance, a grievance is "Any dispute concerning the interpretation or application of a written memorandum of understanding ·or of departmental rules and regulations governing personnel practices or working conditions." (L.A. City Admin. Code, div. 4, ch. 8, § 4.801; see L.A. Admin. Code, div. 4, ch. 8, § 4.865, subd. a.) The memorandum of understanding contains an identical definition of this term. (Memorandum of understanding, art. 23, § I.)

Respondents' proposed interpretation of the memorandum of understanding would conflict with the ordinance since respondents' version would cre-

ate a special category of grievances, those that involve suspensions or dismissals, for which arbitration would not be available.

Scrutiny of the charter section 135 provision for a board of rights review also supports a construction of the memorandum of understanding that allows initiation of grievance procedures after a board of rights review.

Two aspects of the board of rights review demonstrate that the grievance procedure does not merely duplicate the board of rights process. First, the board of rights consists of three senior officers of the rank of "battalion chief or higher." (L.A. City Charter, art. X, § 135, subd. (6).) Review by these officers operates as a check on the authority of the chief, but it still results in a decision by senior officers within the department. The grievance procedure, on the other hand, is required by city ordinance to culminate in binding arbitration by a neutral professional arbitrator. (L.A. City Admin. Code, div. 4, ch. 8, § 4.865, subd. b.)

Second, the employee may be in a very different (and possibly much worse) position after the board of rights review. As explained previously, the board of rights issues its own order, which can be more severe than the chief's original action. (L.A. City Charter, art. X, § 135, subd. (12).) In the instant case, the board of rights ordered that Captain Buzzell be suspended for five days, rather than three. The chief then exercised his discretion to modify the board's order to a four-day suspension. Captain Buzzell faced a small increase in the severity of the penalty imposed after a board of rights review, but, by the terms of the charter, discipline could have been increased from a short-term suspension by the chief to an outright order of dismissal by the board. An employee could conceivably have more disputes with the department over the interpretation of rules governing personnel practices, that is, more grievances, after the board of rights review than before it.

Charter section 135 supports the interpretation that grievance procedures may be used after a board of rights review in two further ways. Subdivision (18) of charter section 135 provides, "This section shall not be construed to in any way affect any other rights any officer or employee may have to pursue or assert any and all other legal rights or remedies . . . or to appeal to or be heard or tried by or before any court or other tribunal of competent jurisdiction . . . ." ▓ The provision of a city's charter takes precedence over the city's ordinances and contractual agreements. (*Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 496 P.2d 1248].) ▓ Thus, subdivision (18) supports the position that section 135 does not preempt the grievance procedures established by the memorandum of understanding and the Employee Relations Ordinance.

The introductory sentence of charter section 135 also bears notice: "The right of an officer or employee of the Fire Department to hold his office or position and to the compensation attached to such office or position is hereby declared to be a substantial property right . . . ." (L.A. City Charter, art. X, § 135, subd. (1).) This declaration argues strongly against creating an exception to the right to binding arbitration before a neutral professional arbitrator in cases of suspension or dismissal.

■ A city's memorandum of understanding must be harmonized with its ordinances and charter provisions in order to be valid. (See *Taylor* v. *Crane* (1979) 24 Cal.3d 442, 450-452 [155 Cal.Rptr. 695, 595 P.2d 129].) In *Taylor* v. *Crane,* a Berkeley police officer who had been dismissed by the Berkeley city manager initiated grievance procedures which resulted in an arbitrator's decision that the officer should be suspended, but not dismissed. Although the memorandum of understanding in that case clearly provided for arbitration of the disciplinary dismissal, the city argued that the arbitrator's decision was not binding on the city because it conflicted with the city charter, which expressly gave the city manager the authority to dismiss employees. (*Id.,* at pp. 449-450.) The court harmonized the charter with the memorandum of understanding, ruling that the city's charter "vests in the city manager the *initial* discretion to determine the proper sanction for violation of city rules. The agreements at issue here do not remove that initial discretion. Instead, they subject it to binding review by an impartial arbitrator. [Citation.]" (*Id.,* at p. 451, italics in original.)

■ Similarly, the memorandum of understanding entered into by the City of Los Angeles can be harmonized with the city's charter and administrative code by interpreting the memorandum of understanding to require completion of the board of rights review prior to initiation of the grievance procedure outlined in the memorandum of understanding.

By interpreting the memorandum of understanding to require completion of the board of rights review prior to initiation of arbitration, we not only harmonize the memorandum with the charter and ordinance, but we also recognize the strong public policy favoring arbitration. ■ Arbitration is a means of resolving labor disputes quickly and inexpensively while easing the burdens on the courts. (*Taylor* v. *Crane, supra,* 24 Cal.3d at p. 452.) ■ Arbitration of this dispute is strongly favored over the alternative, a petition for writ of mandate filed in superior court pursuant to Code of Civil Procedure section 1094.5. ■ "[W]here a city charter or ordinance may be construed to authorize grievance arbitration of broad scope, that construction is preferred." (*Taylor* v. *Crane, supra,* 24 Cal.3d at p. 452.)

■ We hold that the memorandum of understanding between the parties requires employees whose grievance involves a suspension or dismissal to

exhaust the board of rights review provisions of Los Angeles City Charter, article X, section 135, prior to initiating the grievance procedure.

The order denying appellant's petition to compel arbitration is reversed with directions to enter an order directing the parties to proceed to arbitration in accordance with the terms of the memorandum of understanding.

Gutierrez, J.,* concurred.

**HANSON (Thaxton), Acting P. J.**—I respectfully dissent. I would affirm the superior court's order denying appellant's petition to compel arbitration.

In my view the language of the sentence in article 23, section II of the memorandum of understanding (MOU) is clear and unequivocal and therefore does not lend itself to interpretation. That sentence states: "Nothing in this grievance procedure shall be construed to apply to matters for which a remedy is provided by provisions of Section 135 of the City Charter." The parties are bound by the language in the MOU which provides for an election of remedies.

Here, Captain Buzzell has not been denied a remedy or due process. He exhausted his section 135 remedy and wants another bite at the apple by way of arbitration in pursuit of his objective. He is not entitled to a second bite at the apple since the MOU, to which he is bound, does not provide for concurrent or sequential remedies.

Nor does the argument that public policy favors arbitration compel granting Buzzell his second bite at the apple. Here, the alternative to granting arbitration does not result in labor strife. The agreed upon alternative of the MOU is a full and fair evidentiary hearing.

A petition for a rehearing was denied April 13, 1984. Hanson, Acting P. J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied May 16, 1984.

---

*Assigned by the Chairperson of the Judicial Council.