[No. B073846. Second Dist., Div. One. Mar. 18, 1994.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 347,
Plaintiff and Appellant, v.
CITY OF LOS ANGELES DEPARTMENT OF TRANSPORTATION et
al., Defendants and Respondents.

138

COUNSEL

Robert F. Hunt for Plaintiff and Appellant.

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney, and Molly Roff-Sheridan, Deputy City Attorney, for Defendants and Respondents.

OPINION

**ORTEGA, J.**—Kenneth W. Thompson, a respondent City of Los Angeles Department of Transportation (DOT) employee, applied for a job with the city's general services department (GSD). Despite Thompson's first place eligibility list ranking, GSD did not hire him. Pursuant to the governing collective bargaining agreement, or memorandum of understanding (MOU), Thompson filed a grievance, claiming GSD failed to follow proper personnel practices. The MOU requires that grievances be pursued within the employee's department. Thompson did not claim DOT had done anything wrong or could correct the GSD decision. Thus, DOT rejected his grievance. GSD rejected Thompson's grievance because he was not a GSD employee. The MOU requires that unresolved grievances be submitted to binding arbitration. The city refused Thompson's arbitration demand, arguing that, because he was not a GSD employee, the arbitration provision did not apply to this dispute.

Service Employees International Union, Local 347 (SEIU), Thompson's union, petitioned the trial court on his behalf to compel arbitration. The trial court dismissed the petition. SEIU appeals.

We agree with the city that the MOU does not compel arbitration of employees' disputes with departments other than those employing them. We affirm the order dismissing the petition.

## Facts

The city's Employee Relations Ordinance (ERO) No. 141527 (L.A. Admin. Code, ch. 8, § 4.800 et seq.) establishes "policies and procedures for the administration of employer-employee relations in City government, the formal recognition of employee organizations and the resolution of disputes regarding wages, hours and other terms and conditions of employment." (ERO, § 4.800.) The ERO defines grievances as "[a]ny dispute concerning the interpretation or application of a written [MOU] or of departmental rules and regulations governing personnel practices or working conditions. . . ." (ERO, § 4.801.) The ERO defines the MOU as "[a] written memorandum jointly prepared by the parties incorporating matters on which agreement is reached through meeting and conferring between the City's management representatives and representatives of a recognized employee organization. The memorandum shall be presented to the appropriate determining body or official of the City for determination and implementation." (*Ibid.*)

The ERO states: "Responsibility for management of the City and direction of its work force is vested in City officials and department heads . . . . In order to fulfill this responsibility it is the mission of its constituent departments, offices and boards, [to] . . . exercise control and discretion over the City's organization and operations. It is also the exclusive right of City management to take disciplinary action for proper cause, relieve City employees from duty because of lack of work or other legitimate reasons and determine the methods, means and personnel by which the City's operations are to be conducted . . . ; provided, however, that the exercise of these rights does not preclude employees or their representatives from consulting or raising grievances about the practical consequences that decisions on these matters may have on wages, hours and other terms and conditions of employment . . . ." (ERO, § 4.859.)

Subdivision a of section 4.865 of the ERO requires management and union representatives to develop and incorporate into the MOU a grievance procedure for union employees. "Such grievance procedure shall apply to all grievances, as defined in Section 4.801 . . . , shall provide for arbitration of all grievances not resolved in the grievance procedure, and shall conform to the following standards: . . . [¶] (1) Provision shall be made for discussion of the grievance first with the employee's immediate supervisor on an informal basis; [¶] (2) Provision shall be made for the filing of a formal grievance in writing, and for the processing of the unresolved grievance through not more than four, nor less than two, levels of review with written notice of the results of each such review to the employee and to his

representative, if any; [¶] . . . [¶] (4) If the grievance is not resolved in the grievance procedure, either party may submit the grievance to arbitration by written notice to the other party of its desire to arbitrate. . . . With respect to grievances involving the Departments of Airports, Harbor, Water and Power, Library, Recreation and Parks, Pensions and City Employees' Retirement System, the decision of the arbitrator shall be advisory only. With respect to grievances involving all other City departments, the decision of the arbitrator shall be final and binding on the parties . . . ." (ERO, § 4.865, subd. a.)

The ERO designates "[t]he chief administrative officer of each City department or office, or the employee authorized by him to act in such capacity . . . as the City's management representative in formal relationships with representatives of recognized employee organizations on matters which are properly within the scope of represenation and on which the head of the department or office is the determining official." (ERO, § 4.870, subd. a.(2).) The MOU "on matters concerning which the head of a department or office is the determining body or official shall become effective when approved by such body or official." (*Id.*, subd. c.(2).)

Regarding employee relations coordination, the ERO compels the city administrative officer to "[e]stablish a unit in his office to provide advice and technical staff assistance to department and office heads and management representatives in meeting and conferring with representatives of recognized employee organizations, preparing [MOU's], dealing with impasses, carrying out other duties concerning the employee relations program, and *to assure reasonable uniformity among departments in all aspects of the City's employee relations program.*" (ERO, § 4.870, subd. d.(1)(b), italics added.) The ERO also compels the Personnel Department's general manager to "[i]ssue guidelines for departmental working rules." (ERO, § 4.870, subd. d.(2)(b).)

Pursuant to the ERO, the city's "heads of departments, offices or bureaus" and SEIU agreed on and adopted the MOU. Article 1.2 of the MOU states that it "is entered into . . . by the City Administrative Officer, as authorized management representative of the City Council, and the authorized management representatives of the Airports Department, Animal Regulation Department, [*GSD*], Harbor Department, Library Department, Municipal Auditorium Department, Police Department, Public Works Department, Department of Recreation and Parks, and [*DOT*] . . . and . . . SEIU . . . ." (Italics added.) Article 1.3 states that the MOU "shall not be binding in whole or in part on the parties . . . unless and until: [¶] a. [SEIU] has

notified the City Administrative Officer in writing that it has approved this [MOU] in its entirety, and [¶] b. The heads of those departments, offices o[r] bureaus represented herein have approved this [MOU] in its entirety . . . , and [¶] c. The City Council has approved this [MOU] in its entirely."

Article 1.8 states that during negotiations, management and SEIU "each had the unlimited right and opportunity to make demands and proposals on any subject within the scope of representation and that this [MOU] constitutes the full and entire understanding of the parties regarding all such demands and proposals. . . . [¶] The parties mutually agree that this [MOU] may not be opened at any time during its term for any reason, except by mutual consent of the parties hereto. . . ."

Article 3.1 establishes grievance procedures and defines a grievance "as any dispute concerning the interpretation or application of this . . . [MOU] or departmental rules and regulations governing personnel practices or working conditions applicable to employees covered by this [MOU]." The grievance procedure requires grievants to first discuss grievances with their immediate supervisors. Grievances not settled through informal discussion proceed through three review levels, culminating in review by the department general manager, unless settled at lower review stages. Grievances remaining unresolved after general manager review may be mediated with the consent of all parties. Finally, if the grievant and SEIU agree, unresolved grievances may be arbitrated, with the results binding on the parties if the grievance arose in DOT, GSD, and most other departments.

Thompson is a DOT traffic officer. SEIU represents Thompson. The MOU governs labor relations between Thompson, an SEIU-represented city employee, and the city, DOT, and GSD. Thompson took a competitive civil service examination conducted by the city's personnel department for a director of building services position with GSD.[1] Thompson ranked first on the examination. GSD personnel interviewed Thompson. However, GSD chose another applicant.

Thompson first appealed to the civil service commission, which denied his claim on jurisdictional grounds because his complaint involved nonselection, not examination procedures. Thompson then filed a grievance with DOT, which denied his claim because he had no complaint against DOT, which

---

[1]According to the city, "[u]nder the City's Civil Service System, the appointing authority of a department is empowered to make appointments off a list of eligible candidates contained on a civil service list . . . . In the selection process for promotions, as was at issue here, employees of various City departments, and even non-City employees, may compete against each other for the available position(s)." SEIU does not dispute this claim.

could not alter the GSD decision. GSD denied Thompson's grievance because he was not a GSD employee. The city denied Thompson's later arbitration demand because it argued the MOU did not require arbitration of an employee's nonselection for a position with another department.

SEIU petitioned the trial court on Thompson's behalf to compel arbitration. The trial court dismissed the petition, stating: "As the [City] contend[s], the issue here is whether the . . . MOU [] authorizes 'cross department' arbitrations. [¶] [Thompson] here works for [DOT] and was denied a position with the [GSD] . . . . [SEIU] argues that because the . . . [MOU] covers both departments (as well as other certain departments) and employees, and the [MOU] provides for a system of reporting and resolving grievances, including arbitration, that [SEIU] is entitled to arbitration here. [¶] One sentence of the [MOU] arguably supports the [SEIU's] position. [¶] However, read as a whole, the [MOU] and the . . . grievance procedure, it is implicit in the entire text of the document that the [MOU] applies to the enumerated departments as applied to those respective department's employees. In particular, it is clear from the . . . grievance process, that arbitration is mandated only when that process is followed; and that process clearly concerns an employee and his/her particular employing department. [¶] Moreover, this issue appears to have been previously addressed in [*Los Angeles Police Protective League* v. *City of Los Angeles*] (1988) 206 [Cal.App.]3d 511 [253 Cal.Rptr. 641], consistent with [the City's] argument."

## ISSUE

██ SEIU contends the trial court erred in dismissing the petition because the ERO and MOU, when read together, compel arbitration of interdepartmental grievances.

## DISCUSSION

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . . [¶] . . . [¶] If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit. . . ." (Code Civ. Proc., § 1281.2.)

██ ". . . Thus, under [Code of Civil Procedure] section 1281.2, it is the trial court that determines if there is a duty to arbitrate the particular

controversy which has arisen between the parties. [Citation.] In performing its duty to determine if the parties have agreed to arbitrate that type of controversy, the court is necessarily required 'to examine and, to a limited extent, construe the underlying agreement.' [Citation.] [¶] Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute. [Citation.] Additionally, 'If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit.' [Citations.] Thus, we see that if there is a rule of thumb regarding contractual arbitration, it is that such arbitration is a highly favored means of dispute resolution. This includes labor disputes involving collective bargaining agreements. [Citations.] [¶] Our Supreme Court has stated that broad contractual provisions for arbitration are to be liberally construed." (*United Transportation Union* v. *Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808-809 [9 Cal.Rptr.2d 702].)

"The rules concerning the threshold issue of arbitrability have been enumerated in *AT&T Technologies* v. *Communications Workers* (1986) 475 U.S. 643 . . . . The high court explained: (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute he did not agree to so submit; (2) the question of whether the parties agreed to arbitrate a particular grievance is to be decided by the court, not the arbitrator; (3) 'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims'; and (4) where the agreement contains an arbitration clause, a presumption of arbitrability exists, and doubts should be resolved in favor of arbitration. (*Id.*, at pp. 648-650 . . . .)" (*California Teamsters Public, Prof. etc. Union* v. *County of Solano* (1991) 233 Cal.App.3d 800, 803-804 [284 Cal.Rptr. 695].)

The order dismissing SEIU's petition to compel arbitration is appealable "in the same manner as an appeal from an order or judgment in a civil action." (Code Civ. Proc., §§ 1294.2, 1294, subd. (a).) The trial court interpreted the MOU based on undisputed evidence. ■ "The trial court's decision that [the city's challenged discipline of its employee] is outside the scope of the arbitration provisions of the [MOU] is not based upon extrinsic evidence and constitutes a conclusion of law. Thus, ' "[w]e are free to make our own independent interpretation of the terms of the contract and its application to the instant dispute." [Citation.]' [Citation.]" (*United Firefighters* v. *City of Los Angeles* (1984) 153 Cal.App.3d 383, 386-387 [200

Cal.Rptr. 233].) Likewise, because we must interpret the MOU to " 'execute the *mutual* intent and purpose of the parties[,]' " we independently review the appellate record. (*Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1148 [209 Cal.Rptr. 890], disapproved on other grounds in *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 427, fn. 28 [253 Cal.Rptr. 426, 764 P.2d 278].)

■ SEIU argues that the MOU and ERO, read together in light of the undisputed principles discussed above, include interdepartmental employee grievances within the arbitration clause. SEIU also argues the requirement that grievances be pursued through employees' own departments does not render inter-departmental grievances nonarbitrable. SEIU concludes that public policy favors its position.

We disagree. The MOU and ERO recognize that the city is organized into quasi-autonomous departments. The departments, including DOT and GSD, are separate parties to the MOU. Moreover, grievances are defined in both documents as disputes involving wages, hours, or working conditions. Such disputes must be addressed to one's department, the unit which has the ability to address them. Here, Thompson's dispute is not that he was not promoted within DOT, but rather that GSD did not hire him for a new position. Moreover, the fact that Thompson could pursue his grievance if he were a GSD employee does not create separate classifications. A GSD employee denied a promotion within his department can grieve that decision to those who can alter it. A nondepartmental employee is not entitled to a new and different position. Finally, the language requiring regulations to help promote reasonable uniformity in employee relations cannot be read to eliminate the departmental divisions expressly recognized throughout the ERO and MOU.

We agree with the city that *Los Angeles Police Protective League* v. *City of Los Angeles* (1988) 206 Cal.App.3d 511 [253 Cal.Rptr. 641] reaches the same conclusion. In that case, Division Two of this court concluded that a police officer seeking promotion within his department could not challenge questions asked during the promotional interview because the interview, part of the promotional procedure, was controlled by the civil service commission, a separate entity under the city charter. (*Id.* at pp. 513-514.) The court noted that the officer might have challenged the question as a violation of the police department's rules, but had not done so. SEIU claims that fact distinguishes the situation in the case from his case. However, Thompson could not, and does not, challenge anything done by DOT, his own

department. Thus, we think Division Two's analysis applies equally to our situation.

Neither of the two cases relied on by SEIU alters our conclusion. Both *Los Angeles Police Protective League* v. *City of Los Angeles, supra,* 163 Cal.App.3d 1141 and *United Firefighters* v. *City of Los Angeles, supra,* 153 Cal.App.3d 383 involved employee challenging discipline imposed by their own departments. The cases rejected the city's claims that MOU provisions excluding certain grievances from arbitrability applied. Neither case involved interdepartmental grievances.

We conclude the MOU and ERO, read together, do not contemplate that interdepartmental grievances be subject to arbitration. The trial court properly dismissed the petition.

### DISPOSITION

We affirm the order dismissing the petition. The city is entitled to its costs on appeal.

Spencer, P. J., and Masterson, J., concurred.